## National Life Insurance Company of the United States, Appellee, v. Gustave Myers, Appellant.

### Gen. No. 14,356.

1. CONTRACTS—*what sufficient consideration to support.* A contract not to publish certain matters (alleged to be defamatory and false) is based upon a sufficient consideration where it appears that it was predicated upon the delivery of certain papers, the character or value of which does not appear.

2. CHANCERY PLEADING—*what not conclusions of pleader.* To allege a conspiracy is not to state a mere conclusion. The facts constituting the conspiracy alleged need not be set up, as a conspiracy may exist independently of the performance of an overt act.

3. LIBEL AND SLANDER—*when chancery may relieve by injunction.* Equity will restrain the publication of a libel if the threatened libelous publication is in violation of a valid contract, if it is in furtherance of a wrongful conspiracy to destroy property rights and injure the business of the complainant, if the parties issuing the proposed libelous publication are insolvent, if no adequate remedy at law exists, if it is calculated to inflict irreparable injury, the extent of which cannot be definitely ascertained and for which there is no adequate remedy at law, and if all of this is done or sought to be done with malicious and wrongful intent.

Bill for injunction. Appeal from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard

in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed April 3, 1908.

Statement by the Court. This is an appeal from an interlocutory order granting an injunction. The bill of complaint filed by appellee recites *inter alia* that appellee, a corporation organized under the laws of this state, is an old line life insurance company having its principal office in Chicago; that it is engaged in the business of life insurance; that in 1904 it contracted with appellant to become agent and solicit life insurance for appellee; that appellant continued to solicit life insurance and transact business as agent for appellee until in August, 1906, he was discharged "because your orator for the first time then learned that said Gustave Myers had been a criminal, had a criminal record and was still possessed of criminal tendencies, and said agency contract and all rights thereunder terminated"; that after such discharge appellant, wickedly and maliciously intending to destroy the good name, reputation, property and business of appellee, and for the purpose of attempting to levy blackmail, began threatening to communicate with appellee's policy holders to endeavor to induce them to lapse their policies of insurance in the appellee company, to dissuade and prevent persons contemplating taking policies of insurance from appellee; to threaten to cause a notice to be published in divers newspapers of general circulation in every state where appellee was doing business, warning persons against taking insurance or otherwise transacting business with appellee; that for the purpose of executing such threats and of defrauding and injuring appellee, appellant communicated with divers policy holders of appellee and endeavored to induce them to lapse their policies of insurance with appellee, and caused notice to be inserted as an advertisement in a number of prominent papers published in various cities of this state (seven of which are named in the bill) and, as appellee is informed and believes, in other newspapers printed and circulating

in other states, which notice was as follows: "Notice to the Public: All persons contemplating insuring their lives in a company calling itself The National Life Insurance Company of the U. S. A. of Chicago, Illinois, will do well by first making careful inquiry regarding them from any reputable life insurance office or agent or address Insurance 643, care of Journal," intending in said notice and advertisement to charge that appellee was disreputable and an unsafe company; that by means of such publication appellee has been greatly injured in its good name, reputation and property, and suffered great loss of business.

Appellee states that on or about September, 1906, it filed its bill of complaint against appellant, and that while said bill was pending and after an injunction issued against said appellant an agreement was made whereby, in consideration of the delivery by appellee to said Myers of certain papers in appellee's possession and consenting to the dissolution of said injunction and dismissal of said bill, said appellant agreed to ever after refrain from publishing or causing to be published any notice of similar character or substance to those before published, from circulating any false or defamatory written statements or reports about the good name, business property or stability of appellee, or from interfering with appellee, directly or indirectly; that relying on such agreement appellee was induced to consent to the dissolution of said injunction and the dismissal of the said bill of complaint, which accordingly was done; that soon afterward said appellant, in total disregard of his promise and agreement, secretly, maliciously and wrongfully began contriving to injure and destroy the good name, property and reputation of your orator in its business, and to cause it to appear to the public as insolvent, unstable and dishonestly managed, which he did for the purpose of attempting to levy blackmail; that in furtherance of such purpose appellant prepared and caused to be typewritten and exhibited to divers persons and to officers

and directors of appellee a certain document, a copy of which is attached to the bill.

It is further alleged that for the sinister purpose of injuring appellee said appellant retained attorneys to present and file with the Insurance Department of this state certain statements, letters and documents and affidavits prepared or secured by appellant, or at his instance, concerning appellee; that at said appellant's request such attorneys appeared before the Insurance Superintendent at Springfield, Ill., and on the basis of said documents objected to the approval of appellee's report to the Insurance Department of Illinois, and to the approval of the report of an examination of appellee made by said Insurance Department in 1907; that said statements, letters, documents and affidavits filed with the Insurance Department contained false, scandalous, malicious and libelous statements concerning appellee, its business, property and officers; and that the filing thereof and the objections and arguments based thereon were designed and intended to make it appear that the Department of Insurance of Illinois had been remiss and negligent of its duty in its examination of appellee's affairs when it failed to report appellee as insolvent.

Appellee further represents that the examination of appellee by the said Insurance Department was carefully, correctly and honestly made, and that in the report of said examination appellee is found to be solvent and to have assets of more than $1,300,000 in excess of its total contractual insurance liability and that its business is transacted according to law.

It is further represented that said appellant Gustave Myers, one J. Edson McEldowney and others unknown conspired, combined, confederated and agreed among themselves wrongfully, fraudulently and maliciously to injure and destroy the good name, reputation, property and business of appellee and to cause a receiver to be appointed for appellee, by publishing in public newspapers and insurance journals false, defamatory

and libelous statements and reports concerning appellee, its assets, its affairs, its history, property, reputation and its method of doing business, in order to destroy confidence in appellee, intimidate its policy holders, destroy its patronage, defraud and attempt to levy blackmail upon appellee and bring it into scandal and disgrace.

It is further shown that in pursuance of such unlawful conspiracy said McEldowney wrongfully, falsely and maliciously wrote and published a certain false, scandalous, malicious and defamatory libel concerning appellee, a copy of which is attached to said bill, which contained the following: "CHICAGO, September 30.—Property owners in downtown Chicago by calling mass meetings to protest against increase in taxes, which they declare amounts in many instances to confiscation of their property, have incidentally stirred up serious trouble for the management of the National Life Insurance Company" (meaning your orator). "The savings of more than 35,000 policy holders" (meaning policy holders of your orator), "carrying $46,000,000 insurance, are held by some in their ranks to be in danger, and deep inquiry into the company's" (meaning your orator's) "affairs has begun. United States Senator Albert J. Hopkins' law firm is acting for the malcontents."

Appellee alleges that said statements are and were false in all respects, as well as other statements made in said published statement and libel; that said appellant Gustave Myers also wrote and published a false, scandalous, malicious, defamatory libel concerning appellee in the form of a printed pamphlet or document, a copy of which is attached to the bill, which pamphlet contained on its front cover false, scandalous, malicious, defamatory and libelous matter, as follows: "The Crime of a Life Insurance Company" (meaning appellee) "and the Methods of a Clique of Chicago Frenzied Financiers" (meaning E. A. Shedd, Charles B. Shedd and Albert M. Johnson of Chicago, Illinois,

officers, directors and stockholders in your orator);
that said pamphlet contained the following false, scan-
dalous, malicious, defamatory and libelous matter:

>"THE CRIME OF THE NATIONAL LIFE
>INSURANCE COMPANY OF THE UNITED
>STATES OF AMERICA,
>            of Chicago, Ills.
>No more shameless, heartless thievery
>could possibly be imagined than the
>persistent stealing of funds belonging
>to the future Widows and Orphans."
>"THE CRIME OF A LIFE INSURANCE CO.
>            (meaning your orator)

How a clique of 'Ruthless Financiers' 'composed of
Messrs. E. A. and his brother Charles B. Shedd, both of
Chicago Ice Trust fame, and a man by the name of
A. M. Johnson, recently from Cleveland, O., but now a
resident of Chicago, have been manipulating the assets
of The National Life Insurance Company of the United
States of America, whose headquarters are at 159
LaSalle street, Chicago, which Company' (meaning
your orator) 'they' (meaning E. A. Shedd, Charles B.
Shedd and A. M. Johnson) 'control'.

'The savings of almost 40,000 policy holders,'
(meaning policy holders in your orator) 'carrying over
$50,000,000 of life insurance, have been and are now
being so ruthlessly handled, that unless some imme-
diate steps are taken to check it, there is no telling what
will become of the balance of these savings'.

'Over $1,600,000, or over 25% of the entire assets
of this Company' (meaning your orator) 'have disap-
peared as if by magic since Messrs. E. A. Shedd and
A. M. Johnson got control of it' (meaning your orator)
'four years ago'.

'The assets of this Company' (meaning your orator)
'have been so misused and manipulated, that should an
honest examination be made to-day as to the value of
these assets, it would not only disclose the Company'
(meaning your orator) 'to be hopelessly insolvent, but
it would further disclose a condition of 'high finance'
unparalleled in the history of Life Insurance in this
country'."

Appellee sets forth at length quotations from said pamphlet, which are specifically alleged to contain additional false, malicious and scandalous matter.

Appellee further represents that by reason of recent disclosures concerning alleged dishonest methods of certain life insurance companies in certain respects public sentiment has become peculiarly susceptible to any attack upon any life insurance company, however frivolous or groundless such an attack might be and whether the same be false or otherwise; that notwithstanding the said charges emanate in a large measure from said appellant Gustave Myers, a man of criminal record and criminal tendencies, they do appellee irreparable damage; that the effect thereof is insidious and so difficult to trace and refute that it is impossible to trace and measure the damage done and that hereafter will be done on account of the miscellaneous circulation of said libelous matter. Appellee states that it has always borne a good reputation for integrity, fairness, stability and honesty, and that the directors, each and all, are possessed of a good reputation for honesty, integrity and stability, and are capable of managing and have always managed appellee's affairs for the best interests of appellee's policy holders, properly, economically, safely, honestly and conservatively, on approved life insurance principles, and that none of appellee's officers has ever, in handling appellee's affairs, been guilty of any of the defamatory charges in said publications made exhibits; that appellee has in excess of $8,000,000 in assets, more than $51,000,000 of insurance in force, more than 40,000 policy holders, and that its assets exceed its total liabilities by more than $1,400,000, and that appellee's success in properly protecting and giving the best returns to its present policy holders depends upon the preservation of its good name and reputation and upon the trust thereby reposed in it by persons seeking life insurance.

Appellee represents that the actions of said Myers and McEldowney as aforesaid have already done ap-

pellee and its policy holders great and lasting damage; that each of them is threatening to continue the course of conduct such as they are charged with, and will carry out such threats unless restrained by injunction; that to permit the further doing of such acts would be continuing the injury to and substantial interference with appellee's business, the result of which in damages to appellee cannot be compensated by law; that said Gustave Myers and J. Edson McEldowney are utterly insolvent and unable to respond in damages to appellee, could appellee trace in money the damage done by the circulation of said libelous matter.

Appellee prays that said appellant, Gustave Myers, be required to answer certain interrogatories which are set forth at length, and that said Myers and McEldowney and each of them be enjoined and restrained from writing, printing, publishing, circulating and distributing the documents, papers or writings set forth and attached to the bill or any other documents, papers or writings of like import, and that they be restrained and enjoined from conspiring among themselves or with others to write, print, publish, circulate, mail or distribute the documents or papers in said bill set forth, or any other documents of like import, or doing any other acts pursuant to the conspiracy in said bill set forth; that they be enjoined and restrained from persuading the policy holders of appellee to lapse their policies by using said libelous matter or other matter of like import, and from delivering to appellee's agents any of the said libelous matter or other matter of like import or communicating with policy holders or agents of appellee by means of libelous matter of like import to that set forth; and that they be restrained and enjoined from interfering with appellee's business, directly or indirectly, by means of said libelous matter or other matter of like import, and that upon final hearing such injunction be made permanent. Appellee further prays for general relief and the bill is verified by affidavits of appellee's president and secretary.

Notice was served, and upon hearing the Circuit Court granted a preliminary injunction against Gustave Myers substantially as prayed in the bill, upon bond of $2,500, which was given. Appellant, Gustave Myers, appeals from the injunction order.

GOLDZIER, RODGERS & FROEHLICH, for appellant.

L. A. STEBBINS and McKINLEY & SAMPLE, for appellee; W. W. WHEELOCK, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the agreement set up in the bill wherein appellant, in consideration of the withdrawal of an injunction and dismissal by appellee of a bill of complaint then pending, is said to have agreed not to publish an alleged libel, is void; that "the bill does not properly set up a conspiracy"; that the injunction order is void for uncertainty; and that equity has no jurisdiction to enjoin a libel.

So far as they are well pleaded the averments of the bill, for the purposes of this interlocutory appeal, must be taken as admitted. It is urged, however, by appellant's counsel that the correctness of some of the statements made in the publications referred to in the bill, and attached to and made a part thereof, are "nowhere denied." The bill alleges in the most emphatic manner that these publications contain false, scandalous and malicious statements and that they were prepared and circulated with the intent "to destroy the good name, reputation, property and business" of appellee; "for the purpose of attempting to levy blackmail," and for the purpose of "defrauding and injuring" appellee; that the publications contain "divers false, scandalous, malicious and libelous statements concerning your orator, its business, its property and its officers." A number of paragraphs from said publications are set forth in the bill, the statements of which are specifically charged to be false and to have been published

with the intent and for the purpose of injuring appellee in its business. It is averred that by said publications it was intended to create a false impression that appellee's affairs were under investigation by policy holders and others, that appellee had been guilty of crime and violated the penal laws in the management of its business and assets, that its officers are dishonest, have sworn falsely and have handled appellee's assets with intent to convert the same to their own use, that appellee is insolvent and has reported fictitious assets, that in four years $1,600,000 of appellee's assets have been converted to the personal use of officers and directors of appellee, all of which, as well as other like statements, the bill charges, are false and made for the purpose of destroying its business. It is charged that irreparable injury has been done and is being done by these publications for which no adequate remedy exists at law. In view, therefore, of the whole tenor of the averments of the bill, it is difficult to see what bearing the alleged failure to deny a specific statement in some of these publications has upon the question now before us as to the propriety of the interlocutory injunction of which appellant complains.

It is urged that the agreement was void which the bill states appellant entered into, not to publish or circulate thereafter "any false or defamatory written statements or reports about the good name, business, property or stability of" appellee, in consideration of the delivery by appellee to appellant of certain papers in its possession, the dissolution of an injunction against appellant and the dismissal of the bill of complaint upon which such injunction had issued. The contention seems to be that the consideration of this agreement was to the effect that appellant would "not publish or divulge matters in which the public had an interest," and that such agreement is void as against public policy; that "a promise not to do what the law prohibits" is an inadequate consideration for such agreement. We are not aware of any rightful or law-

ful interest the public can have in false or defamatory publications made with intent wrongfully to injure the property and business of anyone. Appellant's contention seems to be to the effect that the contract referred to, which appellant is charged with having violated, was not and is not a valid subsisting contract, for want of a legal consideration, and therefore a court of equity will not and cannot interfere to restrain its breach. There was, however, other consideration than the agreement by appellant not to publish. Certain papers which appellant evidently deemed of some value were delivered to him as a part of the consideration for the promise. The promise not to publish, apparently therefore, was based on a valuable consideration to appellant. Whether or not, when the evidence is presented, the contract will be deemed one the violation of which should be restrained, is not now the question. We have here a promise based on an apparently valuable consideration. It is said in Pomeroy's Equitable Remedies, vol. 1, sec. 270: "Where an agreement stipulates that certain acts shall not be done, an injunction preventing the commission of those acts is evidently the only mode of enforcement." (See also *Idem*, sec. 292.) The question as to whether the injunction should be made permanent on that ground alone is not before us.

There are, however, other and unquestionable grounds for the relief prayed for, which are set forth in the bill. Appellant claims that the bill does not properly set up a conspiracy. The argument is that the charge of conspiracy between the two defendants named in the bill is not based upon facts alleged; that, as in cases of fraud, it is not sufficient to charge a conspiracy, but that the acts constituting it must be alleged. No authorities are referred to in support of this contention. A conspiracy may exist before it is carried into execution by the commission of acts in pursuance of the conspiracy. In the present case, however, the bill not only charges a conspiracy, but points out repeated and numerous acts alleged to have been done in pur-

suance of the conspiracy "to wrongfully, fraudulently and maliciously injure and destroy the good name, reputation, property and business of appellee."

It is further argued that the injunction order is void for uncertainty, but it suffices to say that appellant's counsel fails to substantiate the contention, or point out wherein such alleged uncertainty exists.   See Hey v. Wilson, 128 Ill. App. 227-229.

It is further argued that equity has no jurisdiction to enjoin a libel and that the real scope of the bill is "to enjoin the publication and circulation of what is claimed to be a libel."   Much space is given by appellant's counsel to discussion of the liberty of the press and to decisions in various jurisdictions to the effect that a "court of chancery will not restrain the publication of a libel because it is a libel."   Prudential Life Ins. Co. v. Knott, 10 L. R. Ch. App. 142.   In the present case it is claimed in behalf of appellee that the injunction in this case does not merely restrain the publication of a libel, as to which there is an adequate remedy at law, but that the fact that the publications complained of are alleged to be libelous is but an incident; that the jurisdiction of equity invoked in the case rests upon other and unquestioned grounds.   If a libelous publication is in violation of a valid contract, if it is in pursuance of a wrongful conspiracy to destroy property rights and injure the business of appellee, if the parties issuing the libelous publications are insolvent and no remedy at law exists, if it is inflicting irreparable injury the extent of which cannot be definitely ascertained and for which there is no adequate remedy at law, if the bill shows that not only by publications, but by letters to appellee's agents and employes, appellant is interfering with appellee's business, is seeking to cause policy holders to lapse their policies and to cause its business to be so far ruined as to throw it into the hands of a receiver, and all this wrongfully and with malicious purpose, it is difficult to see why equity should withhold its preventive authority.   In

Barnes v. Chicago Typographical Union, 232 Ill. 424-429, an injunction was granted, in which, among other things, the said union was restrained "from sending any circular or other communications to customers or other persons who might deal or transact business with said complainants or either of them for the purpose of dissuading such persons from so doing." The court said: "The union published weekly what was called a directory of union printing offices of Chicago containing the names of offices where the demands of the union were submitted to and a list of offices on strike, in which latter list were published the names of complainants. The purpose of this directory was to induce people not to deal with the complainants and to compel employes to leave their service." In that case it was urged on the part of the appellants as ground for demurrer that the relief prayed for would deprive the defendants of rights secured to them by article 11, section 4 of the Constitution, which provides that "Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that liberty." The injunction was, however, affirmed. In Loewe v. California Federation of Labor, 139 Fed. 71-86, an injunction was granted restraining the publishing or circulating of statements or representations advertising or calling attention of complainant's customers, merchants, tradesmen or the public to any boycott against complainant and of representations that the product of complainant's factory was "unfair." That case is one of those cited in Barnes v. Typographical Union, *supra*. In Wilson v. Hey, 232 Ill. 389, in which the judgment of the Appellate Court in the same case *(supra)* is affirmed, the contention was made that it was not unlawful to refuse to deal with appellees nor to notify others of such refusal "and to try to induce them by peaceable means not to patronize appellees." In those cases the injunctions were sustained. It is doubtless true, as stated in Covell v. Chadwick, 153 Mass. 263, cited by appellant's counsel, that "so far

as the bill alleges libel by the defendant on the plaintiff, unless he can show that they are somewhat more than mere false representations as to the character or reputation of his property or as to his title thereto, he is not entitled to a remedy by injunction.'' In the case at bar the publications are, according to the bill, more than mere libels, and where, as here, the bill distinctly avers essential facts forming the basis of the prayer for relief so as clearly to apprise the appellant of what he has to meet, it is not necessary that it contain the evidence or recite the circumstances in detail which would support its general statement. The present bill is particularly full in this respect. It clearly shows an irreparable damage which would not be adequately compensated by action at law. The injunction does not attempt to restrain a mere libel. It restrains wilful, malicious and irreparable injury to appellee's property rights, for which the bill shows there is no other adequate relief.

Finding no error in the record, the interlocutory order granting the injunction will be affirmed.

*Affirmed.*