ALLCARE, INC., Plaintiff-Appellant, v. JEFFREY L. BORK, Indiv. and d/b/a Allmed Supplies, *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 88—0242

Opinion filed November 30, 1988.

Sheldon Gardner and George C. Pontikes, both of Foss, Schuman, Drake & Barnard, and Paul W. McVicker, of Pyshos & McVicker, Ltd., all of Chicago, for appellant.

Jeffrey Cole and Andrew T. Staes, both of Jeffrey Neal Cole, Ltd., of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Allcare, Inc., filed a six-count complaint for injunctive and other relief in the circuit court of Cook County on September 25, 1987. On December 18, 1987, the trial court, *inter alia,* entered a

judgment on the pleadings as to counts III, IV and VI for defendants Jeffrey L. Bork, David Krause and Allmed Supplies, Inc. Plaintiff appeals that judgment.

Count I of plaintiff's complaint, asserting a cause of action for defamation, alleged the following. Plaintiff and defendant Allmed Supplies, Inc. (Allmed), are in the medical supply business within the metropolitan Chicago area. On or about February 1987, defendant Jeffrey L. Bork, an owner and the president of Allmed, said of plaintiff, in the presence and hearing of a representative of Ross Laboratories, "I do not want to even try to get that account back because she is paying them off." Bork meant that plaintiff's president, Ruth Aberman, was paying bribes to a customer of plaintiff. On August 28, 1987, defendant David Krause, an Allmed salesman and manager, in the presence and hearing of representatives of the St. Matthews Lutheran Home in Park Ridge, Illinois, said of plaintiff, "I have heard from reliable sources and have to warn you that Allcare is undergoing Medicare Fraud Investigation." The statements made by Bork and Krause were false, defamatory, made with knowledge of their falsity or with reckless disregard of the truth and with the intent to injure plaintiff's business.

Counts II through VI incorporated the allegations of count I. Count II asserted a cause of action for interference with plaintiff's contract to sell dietary supplements and medical supplies to the St. Matthews Lutheran Home. Count III asserted a cause of action for damages based on violation of the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). Count IV asserted a cause of action for injunctive relief based on violation of the Uniform Deceptive Trade Practices Act (Trade Practices Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 311 *et seq.*). Count V asserted a cause of action for conspiracy. Count VI sought injunctive relief against further defamations by defendants. Each count of the complaint named as defendants: Jeffrey L. Bork; Celia Paset Bork, also an owner and officer of Allmed; John Ernst, also an owner and *ex officio* officer of Allmed; David Krause; and Allmed.

On December 18, 1987, the trial court held a hearing on, *inter alia,* a motion by defendants Celia Paset Bork and John Ernst and a motion by defendants Jeffrey Bork, David Krause and Allmed. Defendants Paset Bork and Ernst sought dismissal of the entire complaint as to them. The remaining defendants sought a "judgment on the pleadings dismissing or striking each of the counts of the [c]omplaint or if Count I, II, III or V is not so dismissed or stricken, for its

transfer to the law calendar." After the hearing the trial court ruled, in relevant part:

"2. The Motion to Dismiss on behalf of Celia Paset Bork and John Ernst is granted, plaintiff to have leave to amend as to those defendants within 28 days.

3. The Motion of Jeffrey L. Bork, David Krause and Allmed *** to strike Count II is denied; plaintiff is given 28 days to file an amendment as to stricken Count V.

4. The Motion of Jeffrey L. Bork and all other defendants for judgment on the pleadings on Counts III, IV and VI is granted and judgment hereby entered against plaintiff on said Counts.

5. This case is transferred to the Chief Judge of the Chancery Division for transfer to the law division."

Plaintiff appeals only from paragraph four of the December 18, 1987, order. As such, the only defendants before this court are Jeffrey Bork, David Krause and Allmed (hereinafter appellees).

Before addressing the merits of plaintiff's appeal, we must address appellees' motion to strike (1) those portions of plaintiff's opening brief referring to the conspiracy alleged in count V of its complaint, and (2) plaintiff's amended count V from the record on appeal. Plaintiff filed an amended count V on January 15, 1988, which appellees answered on February 4, 1988. The motion to strike is based on the assertion that the trial court struck count V as to all the defendants before the trial court, including appellees. Noting that plaintiff did not appeal from that portion of the December 18 order striking count V, appellees assert that plaintiff cannot rely on the allegations of conspiracy contained in its original count V on appeal. Nor, they assert, can plaintiff rely on its amended count V for those allegations.

Quoting the transcript of the December 18 hearing, plaintiff contends that count V was not striken as to the appellees but only as to defendants Paset Bork and Ernst. In this regard, plaintiff characterizes as surplusage the language in paragraph three of the December 18 order granting it leave to file an amended count V inasmuch as the court granted such leave in paragraph two. In any event, plaintiff claims, the allegations of conspiracy contained in count V survived any order striking them by virtue of plaintiff's incorporation thereof in count VI.

We cannot accept plaintiff's characterization of the trial court's action in this case and the December 18 order. We believe that the inclusion of the language granting plaintiff leave to file an amendment to "stricken Count V" in the paragraph denying appellees' motion to

strike count II and the transcript of the December 18 hearing conclusively reveal that that language was not mere surplusage. In asserting the contrary, plaintiff ignores that appellees' motion sought a "judgment on the pleadings dismissing or striking" each count of the complaint.

Plaintiff also ignores the exchange between the trial court and counsel for appellees at the December 18 hearing which we believe reveals the meaning of the language at issue. At the hearing, the trial court first granted the motion to dismiss of defendants Paset Bork and Ernst based largely on the factual insufficiency of the allegations of conspiracy in count V. However, the trial court also granted plaintiff leave to amend the complaint as to those defendants. The trial court then entertained appellees' motion. During the course of the argument thereon, the following colloquy occurred between appellees' counsel and the court:

"MR. SAWYIER: *** We have pointed out we think Count II which is interference with contracts and Count V which is in that general conspiracy count are not well-pleaded, and that it would be appropriate for your Honor to strike them. I believe to amend after the case has been transferred to the law calendar—

THE COURT: They are already going to amend Count V anyway, so that's more or less moot."

This exchange reveals the trial court's determination, based on the insufficiency of count V, to strike that count as to appellees as well as defendants Paset Bork and Ernst. It is only with reference to this exchange that the language of the December 18 order can be understood. This exchange reveals that, in that order, the trial court: (a) implicitly denied appellees' motion to strike or dismiss count I; (b) explicitly denied appellees' motion to strike or dismiss count II; (c) explicitly granted appellees' motion to dismiss, by way of a judgment on the pleadings, counts III, IV and VI; and (d) granted appellees' motion to strike count V pending its amendment by plaintiff.

■■ ■ An appellant cannot rely on facts or theories asserted in a count ordered stricken by the trial court if it does not appeal that order. (*Scheffler v. Ringhofer* (1966), 67 Ill. App. 2d 222, 225, 214 N.E.2d 575.) Thus, on appeal, plaintiff cannot rely on its original count V. Count V having been stricken as factually insufficient as to appellees as well as defendants Paset Bork and Ernst, plaintiff's argument, unsupported by citation to any authority, that count V's allegations of conspiracy survived by their incorporation in count VI is utterly merciless. Nor can plaintiff rely on its amended count V, al-

though it repeats the allegations of the original count V cited on appeal and although defendants answered the amended count. Courts of review must resolve the issues on appeal from the posture of the record at the time the trial court entered the order or judgment appealed from. As such, a reviewing court will not consider a pleading filed after the entry of the order appealed from. (*Mid-City National Bank v. Mar Building Corp.* (1975), 33 Ill. App. 3d 1083, 1088, 339 N.E.2d 497.) For all of the foregoing reasons, we grant appellees' motion.

■ Proceeding to the merits of plaintiff's appeal, we take note that judgments on the pleadings are appropriate only if the pleadings do not raise genuine issues of material fact. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 359 N.E.2d 11.) Moreover, if different or conflicting inferences may be drawn from the facts, there exists a genuine issue of material fact precluding entry of judgment on the pleadings. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) Plaintiff claims that the pleadings created two questions of fact in this case. The first is whether the allegedly defamatory statements of defendants Bork and Krause also disparaged plaintiff's business, *i.e.*, constituted commercial disparagement. The second, if they did constitute such disparagement, is whether its complaint stated causes of action for: (1) common law injunctive relief in count VI; (2) damages for violation of the Consumer Fraud Act in count III; and (3) injunctive relief for violation of the Trade Practices Act in count IV.

Plaintiff cites several cases to support its contention that the alleged defamations uttered by defendants Bork and Krause also disparaged its business. However, those cases either do not support plaintiff's position or, in fact, support the conclusion that those statements constituted defamation but not commercial disparagement.

■ *Crinkley v. Dow Jones & Co.* (1978), 67 Ill. App. 3d 869, 385 N.E.2d 714, held that a statement that the plaintiff had been involved in "payoffs" to agents of foreign governments while a top officer of G.D. Searle & Co. did not disparage the plaintiff's services and entitle him to injunctive relief under the Trade Practices Act or damages under the Consumer Fraud Act. The court noted that section 2(8) of the Trade Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 312(8)) substantially codified the common law tort of commercial disparagement, *i.e.*, disparagement of the quality of one's goods or services. The court held that the statement at issue did not give rise to a cause of action therefor because, while it may have imputed to plaintiff want of integrity in his business, it had not disparaged the quality of his services as an executive. That the statement might constitute

defamation did not change the result since defamation and commercial disparagement are two distinct causes of action. Defamation lies when a person's integrity in his business or profession is attacked while commercial disparagement lies when the quality of his goods or services is attacked. Finally, while one statement could simultaneously constitute defamation and commercial disparagement, such was not the case with the statement at issue. *Crinkley*, 67 Ill. App. 3d at 876-77.

Similarly, *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297, held that a statement accusing the plaintiff, a pet boarding service, of the unlicensed practice of veterinary medicine, a violation of Illinois law, did not constitute commercial disparagement. The court held that the statement did not disparage the quality of the plaintiff's services because it did not indicate that its business practices were substandard, negligent or harmful. As such, the plaintiff was not entitled to injunctive relief under the Trade Practices Act. *American Pet Motels*, 106 Ill. App. 3d at 633.

■ We find the statements at issue in *American Pet Motels*, and especially in *Crinkley*, and the statement in this case to be substantially similar. As such, plaintiff's reliance on the fact, noted in *Crinkley*, that a statement may constitute both defamation and commercial disparagement is simply unavailing. Plaintiff argues that an allegation of Medicare fraud in the medical supply industry also impugns the services of the person thereby defamed because it will cause third parties not to do business with it. In so arguing, plaintiff ignores the settled test, applied in *Crinkley* and *American Pet Motels*, to determine when a statement constitutes a defamation and/or commercial disparagement.

■ Moreover, we believe that in almost every case of defamation of a business or businessman it could be alleged that the defamation caused third partis to refrain from dealing with the plaintiff and, thus, under plaintiff's test, constituted commercial disparagement. However, defamation and commercial disparagement protect different interests. Defamation protects interests of personality. Commercial disparagement protects property interests. As such, there is a " 'clear line of demarcation' " between the two causes of action. (*Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees of America, C.I.O.* (1948), 400 Ill. 38, 49, 79 N.E.2d 46, quoting *Black & Yates, Inc. v. Mahogany Association, Inc.* (3d Cir. 1942), 129 F.2d 227, 235, *cert. denied* (1942), 317 U.S. 672, 87 L. Ed. 539, 63 S. Ct. 76.) Plaintiff's test would ultimately blur the distinction between

defamation and commercial disparagement. As such, we decline to adopt it as the test to determine when commercial disparagement occurs.

Because of the substantial similarity between the statements in *Crinkley* and this case, *Crinkley* is also dispositive of plaintiff's right to damages and injunctive relief under the Consumer Fraud Act and the Trade Practices Act, as alleged in counts III and IV of its complaint. However, to dispose of all of plaintiff's contentions we will examine the cases cited in support thereof.

Plaintiff cites *Streif v. Bovinette* (1980), 88 Ill. App. 3d 1079, 411 N.E.2d 341, in arguing that count VI stated a cause of action for injunctive relief under Illinois common law. We decline to construe *Streif* as supporting a common law right in plaintiff to injunctive relief under the circumstances of this case. Factually, *Streif* is distinguishable from this case. *Streif* involved, amongst other acts, the defendant's repeated complaints, allegedly over a three-year period, to various governmental agencies of violations of State and Federal statutes and regulations by the plaintiff's bus company. *Streif*, 88 Ill. App. 3d at 1080.

■ In stark contrast to *Streif*, plaintiff's complaint does not allege, beyond the two allegedly defamatory statements of defendants Bork and Krause and the stricken allegations of conspiracy, a longstanding and persistent pattern by defendants of defaming plaintiff or of disparaging its products or services. In fact, plaintiff does not allege any facts from which such conduct or the threat of future defamations or disparagements may reasonably be assumed. As such, plaintiff's complaint fails to demonstrate a need for injunctive relief. See *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 633, 435 N.E.2d 1297.

For that reason also, the analogy drawn in *Streif* between the facts of that case and commercial disparagement, which, "[i]n the proper circumstances," may justify injunctive relief (*Streif*, 88 Ill. App. 3d at 1082) is also unavailing to plaintiff. Plaintiff also maintains that the statements of defendants Bork and Krause constitute commercial disparagement as defined in *Streif*. *Streif* cites *Crinkley* and *Aerosonic Corp. v. Trodyne Corp.* (5th Cir. 1968), 402 F.2d 223, also cited in *Crinkley*, in 'defining commercial disparagement. Therefore, the *Streif* definition of commercial disparagement, even if different from the *Crinkley* definition, which we do not believe it is, is of no assistance to plaintiff.

■ Equally unavailing, given the lack of any well-pleaded allegations of such defamations in plaintiff's complaint, are the contentions

that equity will enjoin continuing, greatly damaging defamations, defamations pursuant to conspiracy, and defamations causing injury to property rights or breaches of trust. (See *Montgomery Ward & Co. v. United Retail, Wholesale & Department Store Employees of America, C.I.O.* (1948), 400 Ill. 38, 42, 79 N.E.2d 46.) That equity may enjoin defamations causing breaches of contract (see *Montgomery Ward & Co.,* 400 Ill. 38, 79 N.E.2d 46) does not aid plaintiff given its failure to allege any facts supporting a conclusion that the statements uttered by Bork and Krause have caused or are likely to cause more than the one breach of contract alleged in the complaint. *Cf. American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 633, 435 N.E.2d 1297 (plaintiffs showed no basis for assuming a threat of future misrepresentations).

■■■ Further unavailing to plaintiff are the citations in *Montgomery Ward* to *Toledo Computing Scale Co. v. Computing Scale Co.* (6th Cir. 1906), 142 F. 919, wherein an injunction issued against the libeling of the plaintiff's product, and to *Kenderdine v. Rouland* (1931), 260 Ill. App. 194, as a case wherein an injunction issued against defamations of the credit of a business or the character of its officers. This case, unlike *Toledo Computing Scale,* does not involve the libeling of plaintiff's products or services but, like *Crinkley,* the libeling of its integrity. Without going into unnecessary detail, it is safe to say that, unlike this case, *Kenderdine* and *National Life Insurance Co. v. Myers* (1908), 140 Ill. App. 392, cited in *Kenderdine,* involved many repeated instances of defamation against the plaintiffs, a fraternal society and life insurance company, and their officers. Moreover, the courts in each case sustained the allegations of conspiracies by the defendants to irreparably injure the plaintiff concerns. (*Kenderdine,* 260 Ill. App. at 209; *Myers,* 140 Ill. App. at 402-03.) Because the trial court here struck the count alleging a conspiracy by all defendants, plaintiff cannot, unlike the *Kenderdine* and *Myers* plaintiffs, assert a right to an injunction based on conspiracy.

Plaintiff next contends that counts III and IV of its complaint stated causes of action under the Consumer Fraud Act and Trade Practices Act. In support of its right to damages under the former act, plaintiff cites no cases dealing with the same subject matter as this case. In view of *Crinkley,* we will not address the cases which it does cite. In support of its right to injunctive relief under the latter act, plaintiff cites several non-Illinois cases involving facts similar to this case. However, in view of the Illinois cases already cited, those cases do not require the conclusion that plaintiff has stated a cause of action under the Trade Practices Act.

Contrary to plaintiff's assertion, the defendant's efforts to disparage the plaintiff's business in *Menard v. Houle* (1937), 298 Mass. 546, 11 N.E.2d 436, were not enjoined under any statute similar to our Trade Practices Act.

■ Plaintiff also cites *National Educational Advertising Services, Inc. v. Cass Student Advertising, Inc.* (N.D. Ill. 1977), 454 F. Supp. 71, as sustaining an injunction against defamatory statements under the Trade Practices Act. In that case, the defendant told a third party that a bid received from the plaintiff was probably below its costs, that the plaintiff's financial standing and solvency were suspect and that the plaintiff might misappropriate monies due from the third party to plaintiff's clients. The court held, without discussing the difference between the two, that these statements gave rise to causes of action for defamation and commercial disparagement entitling the plaintiff to injunctive relief under the Trade Practices Act. Significantly, in rendering the latter holding, the court assumed that there would be evidence of the likelihood of future disparaging remarks. Here, however, we will not assume the existence of such evidence in order to find a right in plaintiff to injunctive relief given that its complaint is wholly devoid of any well pleaded facts making that assumption reasonable. *Cf. American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 633, 435 N.E.2d 1297 (plaintiffs showed no basis for assuming a threat of future misrepresentations).

■ As previously noted, we believe that *Crinkley* is dispositive of plaintiff's right, as a substantive matter, to state claims for commercial disparagement under the Consumer Fraud Act as well as the Trade Practices Act based on the statements of defendants Bork and Krause. In addition, recent case law construing the Consumer Fraud Act convinces us that, as procedural matter, the statute was intended to provide redress only to consumers generally, not to businesses injured by other businesses where they are not consumers of each other's goods or services. (See *Century Universal Enterprises, Inc. v. Triana Development Corp.* (1987), 158 Ill. App. 3d 182, 510 N.E.2d 1260; *Flood v. Waste Management, Inc.* (N.D. Ill. 1988), ___ F. Supp. ___; *Jay Foods, Inc. v. Frito-Lay, Inc.* (N.D. Ill. 1987), 664 F. Supp. 364; *Horsell Graphic Industries, Ltd. v. Valuation Counselors, Inc.* (N.D. Ill. 1986), 639 F. Supp. 1117.) On this ground also, we affirm the judgment on the pleadings for defendants on count III.

Lastly, we must address appellees' motion for attorney fees and costs under section 2–611 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2–611). Appellees seek the costs incurred in the

circuit court on the ground that even cursory research would have revealed that this case did not involve commercial disparagement, that there was no basis for injunctive relief and that plaintiff could not proceed under the Consumer Fraud Act or the Trade Practices Act. They seek the costs incurred on appeal on the basis of plaintiff's having: (1) relied on the allegations of its stricken count V; (2) allegedly distorted the holdings of the cases cited on appeal; and (3) wilfully ignored binding and relevant authority.

Section 2—611 requires that an attorney or party sign every paper filed with the court. The signature constitutes a certificate that, *inter alia*, the paper is warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law and is not interposed for an improper purpose, such as to harass, cause unnecessary delay or needless increase in the cost of litigation. Section 2—611 allows an appropriate sanction, including the other party's reasonable expenses and attorney fees incurred because of its violation. Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

After due consideration, we conclude that plaintiff's arguments in the trial court and this court are not so lacking a legal basis that they warrant a finding of bad faith in the prosecution of this action and appeal. We therefore deny appellees' motion for section 2—611 sanctions.

For all the foregoing reasons, appellees' motion to strike portions of plaintiff's brief and the record on appeal is granted; the judgment on the pleadings on counts III, IV and VI of plaintiff's complaint entered for appellees is affirmed; appellees' motion for attorney fees and costs under section 2—611 is denied; and the cause is remanded for further proceedings consistent with this opinion.

Affirmed and remanded.

McNAMARA and RIZZI, JJ., concur.