**FEDDERS CORPORATION, Plaintiff,**

v.

**ELITE CLASSICS and Cheston Knight, Defendants.**

**Elite Classics, Cheston Knight, and Star Elite, Counter–Claimants,**

v.

**Fedders Corporation and Robert Edwards, Counterclaim Defendants.**

No. 03–CV–4003–JPG.

United States District Court, S.D. Illinois.

Aug. 14, 2003.

Charles L. Joley, Georgiann Oliver, Donovan, Rose et al., Belleville, IL, Constance S. Huttner, Stephanie J. Kamerow, Scott D. Brown, Jonathan M. Seiden, Skadden, Arps, et al., New York, NY, for plaintiff/counter–defendant.

Frederick J. Hess, Lewis, Rice et al., Belleville, IL, Lynn H. Murray, James P. Gitzlaff, Grippo & Elden, Edward D. Manzo, Attorney at Law, Chicago, IL, for defendant/counter–claimant.

Kenneth A. Plevan, Skadden, Arps, et al., New York, NY, for counter–defendant.

## ORDER

GILBERT, District Judge.

This matter comes before the Court on the motion by the counterclaim defendants, Fedders Corporation and Robert Edwards, to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the counterclaim brought by Elite Classics, Cheston Knight and Star Elite For reasons discussed below, the motion will be granted in part and denied in part.

### STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the party opposing the motion. *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir.), *cert. denied*, 531 U.S. 880, 121 S.Ct. 191, 148 L.Ed.2d 132 (2000).

The Court should not grant a motion to dismiss unless it appears beyond doubt that the party opposing the motion cannot prove his claim under any set of facts consistent with its pleading. *Id.* at 405.

In the federal notice pleading system, it is not necessary to plead facts or legal theories *See* Fed.R Civ.P. 8(a), (c). Rather, a complaint or counterclaim is sufficient so long as it provides minimal notice of the basis for the claim, and, in some instances, notice can be achieved by merely pleading legal conclusions. *See, e.g., Bennett v. Schmidt*, 153 F.3d 516, 518–19 (7th Cir. 1998). Parties are not put to their proof until after discovery, at the summary judgment stage. The pleadings are just the "starting point." *Id.*

### BACKGROUND

To put the discussion of the instant motion to dismiss into context, the Court will briefly summarize the pleadings and this case's procedural history.

The plaintiff, Fedders Corporation ("Fedders"), according to its complaint, manufactures a line of room air conditioner units—the "Chassis" line of air treatment products. Fedders alleges that each type of Chassis line unit sold under the Fedders brand features a "distinctive trade dress," consisting of an "undulating curve on the left or right of the faceplate separating the portion of the faceplate on which the controls are positioned from the air intake louvers." *Complaint,* ¶ 13(i) (Doc. 1).

Additionally, Fedders alleges that the design of its X–Chassis unit, Fedders's smallest room air conditioner, includes several innovative features. On January 9, 2003, Fedders filed suit in this Court against two entities: Elite Classics and Cheston Knight.[1] Elite is a Canadian cor-

---

1. Fedders alleges that Cheston Knight is a wholly owned subsidiary of Elite and that Cheston Knight manufactures and markets room air conditioner units. *Complaint,* ¶ 6

(Doc. 1) Elite denies that allegation. *Answer and Counterclaim,* ¶ 6 (Doc. 56), and contends

poration, which markets various products (including light bulbs, small refrigerators, and air conditioners) under the Sunbeam label—through a licensing agreement with Sunbeam Products, Inc.

In a nutshell, Fedders claims that Elite has produced, and marketed under the Sunbeam brand, an air conditioner that is a virtual copy of Fedders's X–Chassis, that the defendants have intentionally copied the X Chassis in order to reduce design time and eliminate design costs, and that, along the way, the defendants have committed certain civil wrongs. More specifically, Fedders alleges that the face plate of the Sunbeam air conditioner contains an "undulating curve" which is very similar to the curve that appears on the Chassis line air conditioners sold under the Fedders brand. Based on this alleged similarity, Fedders has brought claims under § 43(a) of the Lanham Act and certain Illinois statutes. Additionally, Fedders alleges that the defendants have duplicated certain internal components of the X Chassis by misappropriating designs and molds owned by Fedders. Based on this alleged misappropriation, Fedders has brought a common law unfair competition claim.

Elite denies any wrongdoing. Moreover, Elite, Cheston Knight and Star Elite ("the Elite Group") have filed a counterclaim against Fedders and Robert Edwards, Fedders's General Counsel. The Elite Group alleges that Fedders and Edwards have "engaged in a pattern and practice of unfair competition and anticompetitive conduct designed to ruin the reputation of Elite Classics, Cheston Knight and Star Elite . ." *Answer & Counterclaim,* ¶ 62 (Doc. 56).

The Elite Group alleges that they have been wrongfully disparaged by Fedders and Edwards in two communications (1) a September 4, 2002 e-mail by Robert Edwards to Fedders executives that was allegedly distributed to certain retailers, and (2) a January 9, 2003 press release that is posted on Fedders's corporate web-site and that was also allegedly distributed to certain retailers. Both documents are attached to the counterclaim as exhibits. The September 4, 2002 e-mail stated in part, as follows.

As you are aware, we are faced with an extremely serious situation where the designs, parts made with our tooling, and proprietary parts sourcing knowledge for one of our room air conditioners has been 'pirated.' These units are being sold in North America under the Sunbeam trademark. The goods are being manufactured in China and then distributed in North America through a company that is using the Sunbeam name, with or without its authorization Our investigation of this matter to date has led to some disturbing conclusions. First, it is apparent that our molds have been used to make parts for the Sunbeam unit. The parts were treated with a chemical in a crude and ineffective attempt to mask our part numbers sometime after the parts came out of our molds. This was done without our knowledge or permission and constitutes a theft of our designs and tooling for use on unauthorized product. The "trade dress" of our product, its "look and feel" if you will, has been compromised.—We are convinced that we have more than enough evidence to proceed with an action to seek injunctive relief against the sale of this product, and Fedders is taking such action against the manufacturer and its agents without delay.

While the e-mail was addressed only to Fedders executives, the e-mail encouraged its addressees to "bring this matter to the attention of all concerned or potentially

that Star Elite is "the current distributor of Sunbeam air conditioners." *Id.,* ¶ 70.

concerned parties." Elite alleges that copies of the e-mail reached retailers within days.

About four months later, on January 9, 2003. Fedders filed this suit and published the aforementioned press release. Essentially, the press release summarizes the allegations contained in the complaint, referring to the allegations as allegations. Finally, the counter-claimants contend that Fedders timed the filing of this law suit to coincide with the "critical mid-winter selling season." *Answer and Counterclaim,* ¶ 62 (Doc. 56). According to the counter-claim, "Fedders' (sic) accusations and the timing of those accusations were specifically designed to interfere with the short selling season for room air conditioners and to severely damage Elite's reputation." *Answer and Counterclaim,* ¶ 68 (Doc. 56). The Elite Group alleges that Fedders is the "number one manufacturer of room air conditioners in the U.S. with a 25% market share in 1999." *Answer and Counterclaim,* ¶ 75 (Doc. 56).

The counter-claimants assert claims for defamation (Count II), for intentional interference with prospective economic advantage (Count V), under the Illinois Uniform Deceptive Trade Practices Act (Count I), under the Sherman Act (Count IV), for commercial disparagement (Count III), and under the Illinois Consumer Fraud and Deceptive Business Act (Count VI). The final count of the counterclaim (Count VII) seeks a declaratory judgment.

## DISCUSSION

### A. *Defamation (Count II).*

Under Illinois law, there are two types of defamation claims, *per se* and *per quod.* "A publication is defamatory *per se* if it is so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary and extrinsic facts are not needed to explain it." *Dubinsky v. United Airlines,*

303 Ill.App.3d 317, 236 Ill.Dec. 855, 708 N.E.2d 441, 447 (1999). "A claim for defamation *per quod* requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity. *Id.*

As to a corporation, three types of statements may be defamatory *per se* (1) statements that impute the commission of a crime, (2) statements that impute an inability to perform or want of integrity in discharge of duties, and (3) statements that impute a lack of ability in the corporation's trade. *See Bryson v. News Am. Publications, Inc.,* 174 Ill.2d 77, 220 Ill. Dec. 195, 672 N.E.2d 1207, 1214–15 (1996). A statement is not libelous *per se* if it is substantially true, if it is not injurious on its face, if it is an expression of opinion, or if, taken in context, it is reasonably capable of an innocent construction. Because the counter-claimants are corporations, they must show actual malice—that the statements were made with knowledge of their falsity or reckless disregard for their truth. *Conseco Group Risk Management Co. v. Ahrens Fin Sys.,* No. 00 C 5467, 2001 WL 219627, at *8–10 (N.D.Ill. March 6, 2001).

### 1. *The E–Mail.*

Robert Edwards's e-mail is reasonably capable of an innocent construction, and, therefore, is not defamatory *per se.* It does not expressly accuse Elite or even "the company that is using the Sunbeam name" of any wrongdoing. Rather, the e-mail essentially states that Fedders's designs and molds have been "pirated" and that such copying, by whomever it was committed, was "theft." The e-mail does not lay blame upon the counter-claimants, and an equally reasonable interpretation of the e-mail would be that a Chinese manufacturer was responsible for the alleged

misappropriation.[2] Therefore, under Illinois's innocent construction rule, Edwards's e-mail is not actionable *per se*— that is, without proof of special damages.

■ The Elite Group argues, however, that the counterclaim also states a claim for defamation *per quod.* The innocent construction rule does not apply to defamation *per quod* claims. *Mittelman v. Witous,* 135 Ill.2d 220, 142 Ill.Dec. 232, 552 N.E.2d 973, 979 (1989). To maintain an action for defamation *per quod,* a plaintiff not only must allege extrinsic facts to prove the defamatory nature of the statement but also must plead and must prove special damages. *See Dubinsky v. United Airlines Master Executive Council,* 303 Ill.App.3d 317, 236 Ill.Dec. 855, 708 N.E.2d 441. 303 Ill.App.3d 317, 236 Ill.Dec. 855, 708 N.E.2d 441, 447 (1999). This heightened pleading requirement is applicable in federal as well as state court. *See* Fed R Civ.P. 9(g), *Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918 (7th Cir. 2003).

In this case, the counterclaim alleges that "Elite has suffered actual damages as a result of Fedders' (sic) and Edwards' (sic) defamatory statements, including .. out-of-pocket costs associated with dealing with Fedders' (sic) false statements and misrepresentations, as well as lost sales and profits." The Court believes that this allegation is sufficient to put the counterclaim defendants on notice of a claim that the counter-claimants have suffered monetary damages as a result of the allegedly defamatory statements. *See Fleck Bros. Co. v. Sullivan,* 385 F.2d 223, 225 (7th Cir.1967).

Therefore, as to the e-mail, the counterclaim is sufficient to state a claim for defamation *per quod.* At this stage, the Court accepts all allegations as true and draws all reasonable inferences in favor of the counter-claimants, and, accordingly, the Court will not dismiss the defamation *per quod* claim involving the e-mail.

2. *The Press Release.*

■ It is not clear whether the counter-claimants intend to claim that the press release constitutes defamation *per se* or *per quod.* Because the counter-claimants have pled special damages in a manner adequate to state a *per quod* claim, the Court need not discuss at this stage whether the press release fits within one of the *per se* categories.

Fedders's press release accurately reports the allegations contained in Fedders's complaint and refers to the allegations as allegations. Thus, there is no dispute that the press release is literally true. The counter-claimants, however, cite one unreported case for the proposition that prefacing otherwise defamatory statements with the phrase, "the complaint alleges," does not shield the statements from an action for defamation. *See Republic Tobacco LP v. North Atlantic Trading Co.,* No. 98 C 4011, 1999 WL 261712 (N.D.Ill. 1999). In other words, according to the counter-claimants, Fedders's press release may be defamatory—even though it is without question literally true. The counter-claim defendants have not responded to this argument, and the Court has found little authority either to support or contradict the counter-claimant's position.

In factually similar cases, the issue has been framed in terms of whether the so-called "fair comment rule" affords a privilege to the party reporting the contents of judicial proceedings. Under Illinois law,

---

**2.** In ruling on cross motions for preliminary injunctive relief, the Court concluded that there was ample evidence that the statements in Edwards's e-mail were substantially true, or, at least, made in good faith. However, evidence outside the pleadings is not considered in resolving the motion to dismiss.

as a general rule, communications accurately reporting the contents of judicial proceedings are privileged. *See American District Telegraph Co. v. Brink's Inc.,* 380 F.2d 131, 133 (7th Cir.1967) (interpreting Illinois law and affirming district court's dismissal, on a motion for summary judgment, of a claim for defamation based on press release summarizing contents of a lawsuit). The privilege is applicable as soon as the complaint is filed. *Newell v. Field Enterprises Inc.,* 91 Ill.App.3d 735, 47 Ill. Dec. 429, 415 N.E.2d 434, 443–46 (1980). To overcome the privilege, a party claiming that such a communication is defamatory must show that it was made *"solely for the purpose of defaming [that party] and not to inform the public" Scheidler v. National Organization for Women, Inc.,* 739 F.Supp. 1210, 1215 (N.D.Ill.1990).

In this case, whether the press release was issued solely to defame the counter-claimants or for some other purpose is a question of fact, and such a question of fact precludes dismissal of the claim at this stage of the proceedings. Nor will the Court dismiss the claim because the counter-claimants failed to use certain magic language, such as "solely for the purpose of." Given federal liberal pleading standards, the counter-claimants have sufficiently stated a defamation *per quod* claim regarding the press release. *But cf. Scheidler,* 739 F.Supp. 1210 (interpreting Illinois law and dismissing, on a 12(b)(6) motion, defamation claim based on statements at a press conference and in news release that accurately reported contents of a lawsuit when plaintiff had "failed to allege that the sole purpose of the statements. . was to cause him harm and not to inform the public ").

B. *Intentional Interference with a Prospective Economic Advantage (Count V)*

■ To succeed on this claim, Elite must ultimately show: (1) the existence of a valid business relationship or expectancy, (2) the knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Galinski v. Kessler,* 134 Ill.App.3d 602, 89 Ill.Dec. 433, 480 N.E.2d 1176, 1180 (1985)

■ Under Illinois law, "[a] defendant is privileged to interfere with a competitor's relationship with a third party unless that party acted with malice, or utilized wrongful means." *Lynchval Systems, Inc. v. Chicago Consulting Actuaries, Inc.,* 95 C 1490, 1998 WL 151814 (N.D.Ill. March 27, 1998). When a party makes both defamation and intentional interference claims, the two claims are "analytically intertwined." *Delloma v. Consolidation Coal Co.,* 996 F.2d 168, 172 (7th Cir.1993) (citing *Mittelman v. Witous,* 135 Ill.2d 220, 142 Ill.Dec. 232, 552 N.E.2d 973, 981 (1989)). True statements, "with or without privilege," are not actionable. *Delloma,* 996 F.2d at 172

■ In this case, the counterclaim defendants are entitled to the competitor's limited privilege. Thus, to prevail, the counter-claimant will ultimately be required to show not only that the subject communications contained false statements that caused an injury, but also that the statements were made with malice. However, whether the statements in question were false and whether they were made with malice are questions of fact. Here, the Court accepts all allegations as true and draws all reasonable inferences in favor of the counter-claimants. Therefore, the Court will not dismiss Count V's intentional interference claim.

### C. *Illinois Uniform Deceptive Trade Practices Act (Count 1)*

The UDTPA states in pertinent part:

> A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person—(8) disparages the goods, services, or business of another by false or misleading representation of fact; [or]—(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2. "The [UDTPA] does not provide a cause of action for damages, but it does permit private suits for injunctive relief ..." *Greenberg v. United Airlines,* 206 Ill.App.3d 40, 150 Ill.Dec. 904, 563 N.E.2d 1031, 1036–37 (1990) (citation omitted). It provides a remedy for disparagement of a product. *See Roper Whitney, Inc. v. TAAG Machinery Co.,* No. 99 C 50032, 2003 WL 57029, at *2 (N.D.Ill. Jan.7, 2003) (citing *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 274 (7th Cir.1983)).

"So long as the statements at issue do not disparage the quality of the plaintiff's goods or services, no cause of action will he under [the statute]." *Roper Whitney,* 2003 WL 57029, *2 (citing *Allcare, Inc. v. Bork,* 176 Ill.App.3d 993, 126 Ill.Dec. 406, 531 N.E.2d 1033, 1037–38 (1988)). The statute is not applicable to a statement about whether a competitor has broken the law, and "statements that impute a want of integrity are not actionable under the UDTPA." *Republic Tobacco, LP v. North Atlantic Trading Co.,* No. 98 C 4011, 2002 WL 531349, at *9 (N.D.Ill. April 5, 2002). The statute only applies to statements that are false. *Richard Wolf Medical Instruments Corp. v. Dory,* 723 F.Supp. 37, 40 (N.D.Ill.1989) In this case, the challenged statements are unrelated to the quality of the counter-claimant's products, and, therefore, the UDTPA is not applicable.

Accordingly, Count I of the counterclaim will be dismissed.

### D. *Antitrust Claim (Count IV)*

Section 2 of the Sherman Act proscribes "attempted monopolization" upon proof (1) that the defendant has engaged in predatory or anticompetitive conduct, (2) of a specific intent to monopolize a market, and (3) of a dangerous probability of achieving monopoly power in the relevant market. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). "In antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly". *Hospital Bldg. Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (citations omitted).

In this case, the counter-claimants have adequately alleged a violation of § 2 of the Sherman Act. Specifically, the counter-claimants allege that Fedders has used the "threat of litigation" and "has made false and misleading statements to Elite's customers and to consumers" for the purpose of interfering with Elite's relationships with its customers and potential customers. *Answer and Verified Counterclaim,* ¶ 118 (Doc. 56). Elite further alleges that Fedders has done so with the "intent to achieve monopoly power and exclude competition in the market for room air conditioners." *Id.* Finally Elite alleges that there is a "dangerous probability" that Fedders will succeed in obtaining monopoly power. *Id.* at ¶ 119. The counter-claimants allege that Fedders is the largest manufacturer of room air conditioners in the United States with a 25% market share in 1999.

The counterclaim defendants rely on evidence outside the pleadings in an attempt

to establish that they are unlikely to obtain monopoly power in the room air conditioner market. At this stage in the proceedings, however, the Court will not consider matenals beyond the plendings.

 The counterclaim defendants also assert that the *Noerr–Pennington* doctrine, which provides antitrust immunity to those who seek to use the courts to protect their intellectual property rights, is applicable and bars the counter-claimants' Sherman Act claim. The counter-claimants contend that if the *Noerr–Pennington* doctrine is applicable, then the so-called "sham" litigation exception to the *Noerr–Pennington* doctrine is also applicable. Under the sham litigation exception, a lawsuit may constitute an antitrust violation when (1) the lawsuit is objectively baseless and no reasonable litigant could reasonably expect to succeed, *and* (2) the lawsuit is an attempt to interfere directly with the business relationships of a competitor. *See Professional Real Estate Investors Inc. v. Columbia Pictures Indust.,* 508 U.S. 49, 60–61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). A single suit may constitute sham litigation when it is "pursued in order to impose high cost of defending rather than to obtain relief." *Village of Bolingbrook v. Citizens Utilities Co. of Illinois,* 864 F.2d 481, 483 (7th Cir.1988)

To date, this Court has seen no evidence that Fedders's suit is either objectively baseless or brought for an improper purpose. Although Fedders's Complaint has not been tested by a motion to dismiss, it appears to have a reasonable legal basis and does not evince an abuse of the judicial process. On the other hand, whether Fedders's claims are supported by a reasonable factual basis and whether the suit has been brought for an improper purpose are questions of fact, which cannot be resolved at this stage. Therefore, the Court will not dismiss the counter-claimants' Sherman Act claim.

E. *Commercial Disparagement (Count III), the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI), and Declaratory Judgment (Count VII)*

On a Rule 12(b)(6) motion, the burden is on the moving party to establish the legal insufficiency of the subject claim. Here, the counterclaim defendants have not met that burden as to the claims in Counts III, VI, and VII.

In regards to the counter-claimants' claim for commercial disparagement brought in Count III of the counterclaim, the counterclaim defendants state only as follows:

> The UDTPA claim, accordingly is legally insufficient (*as is the doctrine of common law commercial disparagement*), because Fedders' (sic) Email did not address the *quality* of Defendants' Sunbeam air conditioner.

*Memorandum in Support of Motion to Dismiss,* p. 6 (Doc. 59) (emphasis added). Neither the motion nor the brief in support of the motion make any other mention of commercial disparagement. Count VI of the counterclaim—brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act—is not mentioned in either the motion to dismiss or brief in support. Finally, the counterclaim defendants have provided the Court no basis for dismissing Count VII, which seeks a declaratory judgment.

The Court is not obliged to craft arguments or perform necessary legal research for the counterclaim defendants. *See Spath v. Hayes Wheels International–Indiana, Inc.,* 211 F.3d 392, 397 (2000). Therefore, these claims will not be dismissed.

## CONCLUSION

For reasons discussed above, the motion to dismiss (Doc. 58) is granted in part and denied in part. It is **GRANTED,** as follows: Count I of the counterclaim is dismissed. It is **DENIED,** as follows: Counts II–VII remain.

**IT IS SO ORDERED.**