Rose CONTINENTE, d.b.a. G. Continente,
Plaintiff,

v.

John A. CONTINENTE, Defendant.

No. 41831.

United States District Court
N. D. California, S. D.

Aug. 23, 1965.

Gardner & Zimmerman, Harris Zimmerman, Oakland, Cal., for plaintiff.

William G. MacKay, San Francisco, Cal., for defendant.

HARRIS, Chief Judge.

This is an action to enjoin alleged infringement of the trademark "CONTINENTE", which surname has been registered in the United States Patent Office (No. 591,366) and for injunctive and other relief based upon the defendant's alleged unfair competition.

Trial was had on the factual issues on April 21 and April 22, 1965 and briefs were submitted by both sides on the legal questions raised herein. It appears that the name "CONTINENTE" has been used continuously as a trademark for the marketing of juice grapes since 1937 by Giovanni Continente, who died in 1954, and thereafter by his wife, Rosa, the plaintiff in this action. In 1954, United States Patent Office Registration No. 591,366 was duly issued to her for the mark "CONTINENTE" to cover various fruits, including juice grapes. The validity of this registration has been contested by the defendant upon the ground that the registration certificate as issued is much broader in scope than that to which the applicant is entitled. The court finds that there was no fraud in the procurement of this registration and that whatever irregularities existed in connection with its issuance have been amended and corrected so

that the prayer for cancellation should be denied.[1]

This controversy arose when John A. Continente, nephew of the deceased Giovanni Continente, planned to market his own grapes under the name "CONTINENTE". He had been producing grapes for some time but had previously sold his grapes to his uncle. He ordered certain labels which were affixed to the boxes in which his grapes were to be sold during the 1962 season.[2] Although there is some conflict in the testimony, it appears that few, if any, boxes bearing this label were distributed during the 1962 season and none thereafter. Following written objections to the further use of this label,[3] John Continente purchased four rubber stamps containing the indicia "JOHN A." which he then stamped on each of his paper labels prior to shipment so that his grapes were marketed under the name "JOHN A. CONTINENTE".

During the 1963 season, John utilized labels bearing the name "GIOVANNI",[4] and "JOHN A. CONTINENTE & SONS",[5] in addition to the "JOHN A. CONTINENTE" stamped label combination. In 1964, he marketed grapes under the newly printed "JOHN A. CONTINENTE" label[6] which, he maintains, he has a protected right to do since that is his own true name.

The plaintiff's particular styling of the mark "CONTINENTE", coupled with the pictorial representation of a small girl on her labels,[7] are affixed to lug boxes which are sold primarily to various wine producers through wholesale markets in New York. This is not a case where the style or lettering adopted by a subsequent seller of the same name is designed to deceive the consuming public. (Max Factor Co. v. Max Factor, D.C., 226 F.Supp. 120.)

Upon the basis of the testimony adduced and the exhibits presented to the court, it is manifest that the block lettering of "JOHN A. CONTINENTE" on a label of different coloration, without the representation of a small child, considering the rather narrow and highly specialized markets to which both plaintiff and defendant make the bulk of their sales, is not likely to create confusion or mistake under the requirements of the Lanham Act.[8]

The testimony put forward by the plaintiff does not support their contention that the "CONTINENTE" name had acquired a secondary meaning. Testimony of plaintiff's own selling agent and business manager on the issue was not persuasive in view of their interest and the inability of plaintiff to present any independent evidence would support a finding that no secondary meaning had attached to the use of the name "CONTINENTE." Further, the cases concerned with the subsequent use of the same or a similar surname all indicate that the proper role of the court is to correct any abuse of the important right to use a personal name rather than to deny that right. (Horlick's Malted Milk Corporation v. Horluck's, Inc., 9 Cir., 59 F.2d 13; Chickering v. Chickering and Sons, 7 Cir., 215 F. 490; Horlick's Malted Milk Corp. v. Horlick, 7 Cir., 143 F.2d 32; John P. Dant Distillery Co. v. Schenley Distillers, Inc., D.C., 189 F.Supp. 821, aff'd 6 Cir., 297 F.2d 935.)

As the court in Crane Co. v. Crane Heating & Air Conditioning Co. et al., 6 Cir., 299 F.2d 577 observed, " * * * the Crane brothers had the right to use their surname Crane in their business so long as they did not attempt to palm off the products which they handled as products of Crane Co. or mislead the public into believing that they were dealing

1. Plaintiff's Exhibit No. 3.

2. Exhibit No. 34 displays the name "CONTINENTE" in prominent lettering, though in a type or script unlike the plaintiff's label.

3. Exhibit No. 34.

4. Exhibit No. 38.

5. Exhibit No. 37.

6. Exhibit No. 36.

7. Exhibit No. 7.

8. U.S. Code Title 15, Section 1114.

with Crane Co. [citing cases]." In the case of Tomsky v. Clark, 73 Cal.App. 412, 238 P. 950, the court commented,

> "The right to do business under one's own name is one of the sacred rights known to the law; and a family name is incapable of exclusive appropriation, and cannot be thus monopolized. Nims on Unfair Competition and Trade Marks (2d Ed.) § 67."

The Supreme Court has ruled that a man may use his own name reasonably and honestly for a legitimate purpose in his own business, Howe Scale Co. of 1886 v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972; Herring-Hall-Marvin Safe Co. v. Hall's Safe Company, 208 U.S. 554, 28 S.Ct. 350, 52 L.Ed. 616, and that the first user, in choosing a family name for his business, assumes the risk of others of the same name using such name fairly in their own business, Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247. In the case at bar, John Continente took every reasonable step to guard against creating confusion or deception in the minds of those who buy his fruit. As soon as the plaintiff objected to his use of the Continente name, he bought and used the rubber stamps referred to above, he experimented with a variety of labels, and at no time did he imitate or copy the style or script of the plaintiff.[9] All the evidence indicates that no deception or attempted deception was practiced by defendant.

Defendant's use of his own name was not adopted for the purpose of impressing the public with the belief that his grapes were those grown by Giovanni Continente's family, International Silver Co. v. Simeon L. & George H. Rogers Co., et al., C.C., 110 F. 955, nor an attempt to capitalize upon what little Eastern advertising was done by the plaintiffs, Max Factor & Co., Supra. In fact, everything the defendant did was calculated to distinguish his grapes from those of the plaintiff's[10] and to avoid unfairly competing with her in the same markets.

It is noteworthy that an earlier appraisal of the propriety of using the mark "JOHN A. CONTINENTE" in a size and type as submitted in Exhibit No. 36 was upheld by my brother Judge Stanley A. Weigel—and that appraisal in the light of all the evidence appears to have been a correct one. Upon application for a preliminary injunction in this case, Judge Weigel virtually decided this case by concluding that use of the name "JOHN A. CONTINENTE" did not interfere with the plaintiff's mark and he authorized its use for the ensuing grape season.

Accordingly, it is ordered that the request for an injunction against use of the name JOHN A. CONTINENTE in the fashion described above is hereby denied.

It is further ordered that the plaintiff take nothing by her complaint.

It is further ordered that the request for cancellation of the plaintiff's duly registered trademark is hereby denied.

It is further ordered that findings of fact and conclusions of law and decree of final judgment be prepared by the defendant.

---

9. Cf. MacSweeney Enterprises v. Tarantino, 106 Cal.App.2d 504, 235 P.2d 266, where the particular script of the plaintiff was simulated by the defendant.

10. The defendant on one of the labels adopted during the 1963 season even went so far as to misspell his own name.