# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-3452

PEACEABLE PLANET, INC.,

*Plaintiff-Appellant,*

v.

TY, INC. and H. TY WARNER,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 7350—**John W. Darrah**, *Judge*.

_____

ARGUED FEBRUARY 26, 2004—DECIDED APRIL 2, 2004

_____

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. In the most common type of suit for
trademark infringement, the plaintiff complains that the
defendant is passing off his (inferior) product as the plain-
tiff's. But here we have the converse case of "reverse passing
off," in which the plaintiff complains that the defendant is
trying to pass off the plaintiff's product as the defendant's.
*Illinois High School Ass'n v. GTE Vantage Inc.*, 99 F.3d 244, 246
(7th Cir. 1996); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
978 F.2d 947, 957-58 (7th Cir. 1992); *A & H Sportswear, Inc. v.
Victoria's Secret Stores, Inc.*, 237 F.3d 198, 227-29 (3d Cir.

2000); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 740-41 (2d Cir. 1994). Why would anyone want to do such a thing? One reason might be to obliterate the plaintiff's corporate identity and prevent him from entering new markets, where the defendant, having appropriated the plaintiff's trademark, would claim that the plaintiff was the infringer. Such would be a case of deliberate reverse passing off, and terms like "passing off" and "reverse passing off" are sometimes reserved for deliberate efforts to confuse the consuming public, but either form of confusion can be actionable without proof of intent to confuse.

The trademark infringement claim is federal, and there is also a claim for false advertising, also under the Lanham Act, plus several claims governed by Illinois law, including one for product disparagement. All the claims were rejected on summary judgment.

The disappointed plaintiff is Peaceable Planet. Like the defendant, the much larger and better known Ty Inc. (there is no comma in Ty's name, but we have left it in the name as it appears in the caption because that is what it is called in the complaint), Peaceable Planet makes plush toys in the shape of animals, filled with bean-like materials to give the toys a soft and floppy feel. Ty's plush toys are, of course, the famous "Beanie Babies."

In the spring of 1999, Peaceable Planet began selling a camel that it named "Niles." The name was chosen to evoke Egypt, which is largely desert except for the ribbon of land bracketing the Nile. The camel is a desert animal, and photos juxtaposing a camel with an Egyptian pyramid are common. The price tag fastened to Niles's ear contains information both about camels and about Egypt, and the Egyptian flag is stamped on the animal.

A small company, Peaceable Planet sold only a few thousand of its camels in 1999. In March of the following

year, Ty began selling a camel also named "Niles." It sold a huge number of its "Niles" camels—almost two million in one year—precipitating this suit. The district court ruled that "Niles," being a personal name, is a descriptive mark that the law does not protect unless and until it has acquired secondary meaning, that is, until there is proof that consumers associate the name with the plaintiff's brand. Peaceable Planet did not prove that consumers associate the name "Niles" with its camel.

The general principle that formed the starting point for the district court's analysis was unquestionably sound. A descriptive mark is not legally protected unless it has acquired secondary meaning. 15 U.S.C. §§ 1052(e), (f); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); *Ty Inc. v. Perryman*, 306 F.3d 509, 513-14 (7th Cir. 2002); *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2d Cir. 1976). An example is "All Bran." The name describes the product. If the first firm to produce an all-bran cereal could obtain immediate trademark protection, and thus prevent all other producers of all-bran cereal from describing their product as all bran, it would be difficult for competitors to gain a foothold in the market. They would be as if speechless. Had Peaceable Planet named its camel "Camel," that would be a descriptive mark in a relevant sense, because it would make it very difficult for Ty to market its own camel—it wouldn't be satisfactory to have to call it "Dromedary" or "Bactrian."

Although cases and treatises commonly describe personal names as a subset of descriptive marks, *Perini Corp. v. Perini Construction, Inc.*, 915 F.2d 121, 125 (4th Cir. 1990); *Marker Int'l v. DeBruler*, 844 F.2d 763, 764 (10th Cir. 1988); *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987); 4 *Callmann on Unfair Competition, Trademarks & Monopolies* §

22:42 (4th ed. 2003), it is apparent that the rationale for denying trademark protection to personal names without proof of secondary meaning can't be the same as the rationale just sketched for marks that are "descriptive" in the normal sense of the word. Names, as distinct from nicknames like "Red" or "Shorty," are rarely descriptive. "Niles" may evoke but it certainly does not describe a camel, any more than "Pluto" describes a dog, "Bambi" a fawn, "Garfield" a cat, or "Charlotte" a spider. (In the *Tom and Jerry* comics, "Tom," the name of the cat, could be thought descriptive, but "Jerry," the name of the mouse, could not be.) So anyone who wanted to market a toy camel, dog, fawn, cat, or spider would not be impeded in doing so by having to choose another name.

The reluctance to allow personal names to be used as trademarks reflects valid concerns (three such concerns, to be precise), but they are distinct from the concern that powers the rule that descriptive marks are not protected until they acquire secondary meaning. One of the concerns is a reluctance to forbid a person to use his own name in his own business. *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 725-26 (9th Cir. 1985); *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 735-36 (2d Cir. 1978); 2 *McCarthy on Trademarks & Unfair Competition* § 13:5 (4th ed. 2003); cf. *L.E. Waterman Co. v. Modern Pen Co.*, 235 U.S. 88, 95-98 (1914) (Holmes, J.); *Herring-Hall-Marvin Safe Co. v. Hall's Safe Co.*, 208 U.S. 554, 559-60 (1908) (Holmes, J.). Supposing a man named Brooks opened a clothing store under his name, should this prevent a second Brooks from opening a clothing store under his own (identical) name even though consumers did not yet associate the name with the first Brooks's store? It should not. *Abraham Zion Corp. v. LeBow*, 761 F.2d 93, 104-05 (2d Cir. 1985); *Creager v. Russ Togs, Inc.*, 218 U.S.P.Q. 582, 585 (C.D. Cal. 1982)*; D & W Food Corp. v. Graham*, 286 P.2d 77, 82 (Cal. App. 1955); *Continente v.*

*Continente*, 244 F. Supp. 688, 689 (N.D. Cal. 1965), aff'd, 378 F.2d 279 (9th Cir. 1967); cf. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231-32 (3d Cir. 1978); *S.C. Johnson & Son, Inc. v. Johnson*, 116 F.2d 427, 429-30 (2d Cir. 1940) (L. Hand, J.); compare *Brooks Bros. v. Brooks Clothing of California*, 60 F. Supp. 442, 454 (S.D. Cal.) (secondary meaning acquired by "Brooks Brothers") decision supplemented, 5 F.R.D. 14 (S.D. Cal. 1945), and aff'd, 158 F.2d 798 (9th Cir. 1947).

Another and closely related concern behind the personal-name rule is that some names are so common—such as "Smith," "Jones," "Schwartz," "Wood," and "Jackson"—that consumers will not assume that two products having the same name therefore have the same source, and so they will not be confused by their bearing the same name. 2 *McCarthy on Trademarks & Unfair Competition*, *supra*, § 13:4; *Restatement (Third) of Unfair Competition* § 14, comment e (1995); cf. *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, *supra*, 589 F.2d at 1231 and n. 4; *S.C. Johnson & Son, Inc. v. Johnson*, *supra*, 116 F.2d at 430. If there are two bars in a city that are named "Steve's," people will not infer that they are owned by the same Steve.

The third concern, which is again related but brings us closest to the rule regarding descriptive marks, is that preventing a person from using his name to denote his business may deprive consumers of useful information. Maybe "Steve" is a well-known neighborhood figure. If he can't call his bar "Steve's" because there is an existing bar of that name, he is prevented from communicating useful information to the consuming public. 2 *McCarthy on Trademarks & Unfair Competition*, *supra*, § 13:3; cf. *Basile, S.p.A. v. Basile*, 899 F.2d 35, 38-40 (D.C. Cir. 1990); *Charles J. Donnelly, Inc. v. Donnelly Bros., Inc.*, 191 A.2d 143, 146 (R.I. 1963).

The scope of a rule is often and here limited by its rationale. Or, to make the same point differently, one way of going astray in legal analysis is to focus on the semantics of a rule rather than its purpose. Case 1 might say that a personal name could not be trademarked in the circumstances of that case without proof of secondary meaning. Case 2 might say that personal names cannot be trademarked without proof of secondary meaning but might leave off the qualifications implicit in the circumstances of the case. And then in Case 3 the court might just ask, is the trademark at issue a personal name? As we observed in *AM Int'l, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 575 (7th Cir. 1995), "rules of law are rarely as clean and strict as statements of them make them seem. So varied and unpredictable are the circumstances in which they are applied that more often than not the summary statement of a rule—the terse formula that judges employ as a necessary shorthand to prevent judicial opinions from turning into treatises—is better regarded as a generalization than as the premise of a syllogism." The "rule" that personal names are not protected as trademarks until they acquire secondary meaning is a generalization, and its application is to be guided by the purposes that we have extracted from the case law. When none of the purposes that animate the "personal name" rule is present, and application of the "rule" would impede rather than promote competition and consumer welfare, an exception should be recognized. And will be; for we find cases holding, very sensibly—and with inescapable implications for the present case—that the "rule" does not apply if the public is unlikely to understand the personal name as a personal name. *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 345-46 (2d Cir. 1999); *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1054 (6th Cir. 1999).

The personal-name "rule," it is worth noting, is a common law rather than statutory doctrine. All that the Lanham Act says about personal names is that a mark that is "primarily merely a surname" is not registrable in the absence of secondary meaning. 15 U.S.C. §§ 1052(e)(4), (f). There is no reference to first names. The reason for the surname provision is illustrated by the Brooks example. The extension of the rule to first names is a judicial innovation and so needn't be pressed further than its rationale, as might have to be done if the rule were codified in inflexible statutory language. Notice too the limitation implicit in the statutory term "primarily."

In thinking about the applicability of the rationale of the personal-name rule to the present case, we should notice first of all that camels, whether real or toy, do not go into business. Peaceable Planet's appropriation of the name "Niles" for its camel is not preventing some hapless camel in the Sahara Desert who happens to be named "Niles" from going into the water-carrier business under its own name. The second thing to notice is that "Niles" is not a very common name; in fact it is downright rare. And the third thing to notice is that if it were a common name, still there would be no danger that precluding our hypothetical Saharan water carrier from using its birth name "Niles" would deprive that camel's customers of valuable information. In short, the rationale of the personal-name rule is wholly inapplicable to this case.

What is more, if one wants to tie the rule in some fashion to the principle that descriptive marks are not protectable without proof of second meaning, then one must note that "Niles," at least when affixed to a toy camel, is a suggestive mark, like "Microsoft" or "*Business Week*," or—coming closer to this case—like "Eor" used as the name of a donkey, or the proper names in *Circuit City Stores, Inc. v. CarMax,*

*Inc.*, *supra*, 165 F.3d at 1054, rather than being a descriptive mark. Suggestive marks are protected by trademark law without proof of secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, *supra*, 505 U.S. at 768; *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, *supra*, 149 F.3d at 727; *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n. 3 (9th Cir. 2002). Secondary meaning is not required because there are plenty of alternatives to any given suggestive mark. There are many more ways of suggesting than of describing. Suggestive names for camels include "Lawrence [of Arabia]" (one of Ty's other Beanie Babies *is* a camel named "Lawrence"); "Desert Taxi," "Sopwith" (the Sopwith Camel was Snoopy's World War I fighter plane), "Camelia," "Traveling Oasis," "Kamelsutra," "Cameleon," and "Humpy-Dumpy."

If "Niles" cannot be a protected trademark, it must be because to give it legal protection would run afoul of one of the purposes of the common law rule that we have identified rather than because it is a descriptive term, which it is not. But we have seen that it does not run afoul of any of those purposes. "Niles" is not the name of the defendant—it's not as if Peaceable Planet had named its camel "Ty Inc." or "H. Ty Warner." It also is not a common name, like "Smith" or "Jackson." And making Ty use a different name for its camel would not deprive the consumer of valuable information about Ty or its camel.

Treating the personal-name rule as a prohibition against ever using a personal name as a trademark (in the absence of secondary meaning) would lead to absurd results, which is a good reason for hesitating to press a rule to its logical limit, its semantic outer bounds. It would mean that the man who invented "Kitty Litter" could not trademark the name ("Kitty" is a more common first name than "Niles")

until it had acquired secondary meaning. So as soon as "Kitty Litter" hit the market, a much larger producer of cat litter could appropriate the name, flood the market with its product, and eventually obtain an enforceable trademark in the name by dint of having invested it with secondary meaning, squashing the originator. This is not an entirely fanciful example. Kitty Litter was invented (and named) in 1947 by a young man, Ed Lowe, in Cassopolis, Michigan, a town of notable obscurity. (As recently as July 2002, its population was only 1,703. We do not know what it was in 1947.) At first he sold the new product mainly to neighbors. On Ty's conception of the personal-name rule, without a patent Lowe could not have prevented a large company from selling the same product under the same name, thus squashing him. We cannot see what purpose of trademark law would be served by encouraging such conduct. Ty marks its "Niles" camel with the trademark symbol, and given the ratio of its sales to those of Peaceable Planet's "Niles," the Ty Niles may be well on its way to acquiring secondary meaning—at which point it will be able to enjoin Peaceable Planet from using the name on Peaceable's camel even though Peaceable thought of naming a camel "Niles" before Ty did. For all we know, Ty may have copied the idea from Peaceable, though Peaceable has not proved that.

Ty argues (we are quoting from its brief) that "one competitor should not be allowed to impoverish the language of commerce by monopolizing descriptive names," and "there are a limited number of personal names that are recognized as such by the public." All true. But the suggestion that "Niles" belongs to the limited class of "recognized" names or that "Niles" is the only way to name a camel is ridiculous.

And there is more: as both *Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, and *Circuit City Stores, Inc. v.*

*CarMax, Inc.*, which we cited earlier, point out, a word that is used as a person's name can be understood as something else ("Kitty," again), in which event the personal-name rule falls by the wayside. On the question whether "Niles" is likely to be understood by the plush-toy consuming public as a personal name rather than as a play on "Nile" the river, Ty conducted a survey in which about half the respondents indicated that they consider "Niles" a personal name. That is not an impressive fraction; imagine the response if one asked whether "William" is a personal name, or "Michael" or "Judith." Moreover, the survey was limited to adults even though Ty's primary market is children, and the questions posed to the respondents were slanted by obsessive repetition of the term "person's name," as in (we are quoting from the survey) "Do you think of the word on this card mainly as a person's name, mainly as something other than a person's name, or as both a person's name and as something else, or don't you have an opinion?" The intention doubtless was to create a subliminal association between "Niles" and "person's name." But the survey was not merely devoid of probative value, unprofessional, and probably inadmissible under the *Daubert* standard; it was irrelevant. If people were asked what came to mind when they saw the word "Niles" and they said a camel, there would be an argument that "Niles" was a descriptive mark, and Peaceable Planet would be sunk. The fact that "Niles" can be a person's name (as can almost any combination of letters)—although according to Ty's own statistics only about one resident of Illinois in 50,000 is named "Niles"—does not bear on whether "Niles" is a descriptive mark as applied to a plush toy camel. It is not.

There is a town named "Niles" in Illinois and another one in Michigan, and this is a reminder of the importance of context in characterizing a trademark. "Apple" is a generic term when used to denote the fruit, but a fanciful mark (the

kind that receives the greatest legal protection) when used to denote a computer. If a gas station in Niles, Michigan, calls itself the "Niles Gas Station," it cannot before acquiring secondary meaning enjoin another firm from opening the "Niles Lumber Yard" in the town, on the ground that people will think that the firms are under common owner- ship. 15 U.S.C. §§ 1052(e)(2), (f); *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 628- 29 (4th Cir. 2003); *Boston Beer Co. Limited Partnership v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 181-82 (1st Cir. 1993); 2 *McCarthy on Trademarks & Unfair Competition*, *supra*, §§ 14:1, 14:7. In a town named Niles, firms bearing the name are sharing a name that is too common to be appropriable without proof of secondary meaning. That is not the case when the name is applied to a camel. And while both Niles, Illinois, and Niles, Michigan, are fine towns, neither is the place of origin of the camel or identified with that animal in some other way.

We conclude that Peaceable Planet has a valid trademark in the name "Niles" as applied to its camel, and so the case must be returned to the district court, where Peaceable Planet, to prove infringement of its trademark ("reverse confusion"), will have to show that a substantial number of consumers think that its camel is actually Ty's. For in that event Peaceable Planet will have suffered injury by losing "the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets," *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, *supra*, 978 F.2d at 957, quoting *Ameritech, Inc. v. American Information Technologies Corp.*, 811 F.2d 960, 964 (6th Cir. 1987), and so will be entitled to a remedy. But we agree with Ty that Peaceable Planet cannot prove its case by showing that consumers will think it pirated Ty's product. *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 609- 10 (1st Cir. 1992); *M2 Software, Inc. v. Viacom, Inc.*, 119 F.

Supp. 2d 1061, 1068-69 (C.D. Cal. 2000), reversed on other grounds, 2002 WL 123571 (9th Cir. 2002). That is a charge of defamation rather than of reverse passing off. The purpose of trademark law (setting to one side dilution cases) is to prevent confusion by consumers concerning the sources of the products they buy. Knowing or thinking that a producer is a pirate is not a confusion about source; you know who the source is, whether you think him a good guy or a bad guy.

It is true that some cases say, contrary to *DeCosta*, that being thought a pirate is one of the harms that the prohibition of reverse passing off is intended to prevent. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, *supra*, 978 F.2d at 958; *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 571 (2d Cir. 1993); *Banff, Ltd. v. Federated Dept. Stores, Inc.*, 841 F.2d 486, 490 (2d Cir. 1988). But we think that what these cases mean—this is explicit in our opinion in *Sands*—is that the junior user (Ty) might injure the senior user (Peaceable Planet) by suing for trademark infringement if the latter tried to enter a new market in which the junior was already operating. That would be a case in which reverse passing off had engendered confusion as to source. But that is not argued here, and so if there is reverse passing off here it has to be grounded in evidence other than that of perceived piracy.

Ty contends that there is no other evidence of reverse passing off; and, as is its right, it urges us to affirm the dismissal of the trademark count on this alternative ground, which the district court did not reach because it didn't think Peaceable Planet had a trademark on which to base a suit in the first place. Ty urges the alternative ground in spare and conclusional terms, however, and we think that Peaceable Planet did present enough admissible evidence, though barely, to create a triable issue. The similarity of the products, the identity of the marks, the disparity in the fame of

the respective producers, and the fact that Ty flooded the market—selling 1.8 million of its Niles camels in only a year—and advertised the camel on its popular website, and that traffic on Peaceable Planet's website soared 600 percent after Ty announced the launching of its Niles, taken together, enable though they do not compel an inference that a substantial number of consumers thought that Peaceable's Niles was actually Ty's. It is an issue for trial.

But we think the district judge was right to dismiss the product-disparagement count in Peaceable Planet's complaint. It is conceivable that some consumers, mistakenly thinking that Ty must have been the inventor of "Niles" the camel, would think Peaceable Planet a pirate and think worse of it on that account, though most consumers would probably not care a whit. But product disparagement and defamation are distinct torts. *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 269 (7th Cir. 1983) (Illinois law); *Crinkley v. Dow Jones & Co.*, 385 N.E.2d 714, 719 (Ill. App. 1978); *Boule v. Hutton*, 328 F.3d 84, 94 n. 8 (2d Cir. 2003); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 128, p. 964 (5th ed. 1984). A pirated product is not necessarily inferior to the lawful original; it may indeed be identical to it. So an accusation of piracy is not, as Peaceable Planet appears to think, product disparagement per se. *Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 972 (S.D. Ill. 2003); see *Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.*, 43 F.3d 1119, 1124 (7th Cir. 1994); *Allcare, Inc. v. Bork*, 531 N.E.2d 1033, 1037-38 (Ill. App. 1988); *American Pet Motels, Inc. v. Chicago Veterinary Medical Ass'n*, 435 N.E.2d 1297, 1302-03 (Ill. App. 1982), overruled on other grounds in *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). Highly ethical consumers may think worse of the pirate and turn away from his goods; but if so, and if the junior user is responsible for the false impression that the senior is a

pirate, the junior is guilty of defamation. See *Brown & Williamson Tobacco Corp. v. Jacobson, supra*, 713 F.2d at 269 (Illinois law); *Gardner v. Senior Living Systems, Inc.*, 731 N.E.2d 350, 355-56 (Ill. App. 2000); *Allcare, Inc. v. Bork, supra*, 531 N.E.2d at 1037 (Ill. App. 1988); *Crinkley v. Dow Jones and Co., supra*, 385 N.E.2d at 719. There is no evidence of that here; indeed, the complaint contains no defamation count.

As a detail, we note the superficial oddity of Peaceable Planet's naming Ty Warner as a defendant along with Ty Inc. He is, it is true, the sole owner of Ty Inc., but unless a shareholder—sole, controlling, or otherwise—is shown to have been personally involved in the commission of the tort by his corporation, he is not jointly liable for the tort. However, there is some evidence that Warner may have been personally involved in the decision to use the name Niles on a Ty camel, and if so he may be (we do not say he is—it is an issue for resolution on remand) a joint tortfeasor and therefore suable. *Itofca, Inc. v. Hellhake*, 8 F.3d 1202, 1204 (7th Cir. 1993); *Prince v. Zazove*, 959 F.2d 1395, 1401 (7th Cir. 1992); *Buckner v. O'Brien*, 677 N.E.2d 1363, 1367 (Ill. App. 1997), aff'd under the name *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565 (Ill. 1998); *National Acceptance Co. of America v. Pintura Corp.*, 418 N.E.2d 1114, 1116-17 (Ill. App. 1981).

It remains to consider the other state-law claims in the complaint, plus the federal false-advertising claim. The other state-law claims are violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and common law trademark infringement. The district court thought that all these claims, including the false-advertising claim, fell with the federal trademark infringement claim. Ty doesn't argue that if we reverse the dismissal of that claim we

should nevertheless affirm the dismissal of the other claims on some other ground, and so we shall vacate their dismissal as well.

To summarize, the dismissal of the product-disparagement count is affirmed, but the dismissal of the remaining counts is reversed and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*