In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3073

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RONALD A. DOBEK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cr-00231-RTR-1 — **Rudolph T. Randa**, *Judge.*

ARGUED APRIL 2, 2015 — DECIDED MAY 19, 2015

Before BAUER, POSNER, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* Ronald Dobek, the defendant and appellant, was indicted for exporting munitions illegally, in violation of 22 U.S.C. §§ 2778(b)(2) and (c) and 22 C.F.R. §§ 121.1, 123.1, and 127.1, and for conspiring to do this in violation of 18 U.S.C. § 371. Convicted by a jury of all the counts against him, Dobek was sentenced to 84 months (7 years) in prison. His appeal challenges the admissibility of an alleged co-conspirator's emails, the sufficiency of the evi-

dence to convict him, and the validity of the jury instruction on willfulness.

Dobek was an engineer employed by a Milwaukee firm named Derco Aerospace, Inc., which makes parts for military airplanes. In 2005 and 2006 he was in charge of providing parts for F-16 fighter planes owned by the Venezuelan Air Force. In August 2006, however, the U.S. State Department announced that munitions, including parts for military aircraft, could no longer lawfully be exported to Venezuela without an export license issued by the State Department, and it revoked all existing licenses. Dobek's reaction to this embargo was to create two engineering firms of his own to carry on business with the Venezuelan Air Force. A member of that air force told Dobek that it needed canopy seals for the air force's F-16s. (Canopy seals are devices for sealing the cockpit's transparent acrylic canopy, which gives the pilot all-round vision, to the canopy's frame.)

Suspecting that Dobek was selling canopy seals to the Venezuelan Air Force, FBI agents obtained and executed a warrant to search Dobek's home, where they found a $79,000 purchase order for the seals, though with no purchaser named. To buy the seals in order to be able to fill the purchase order, Dobek had certified to the seller that he understood that the "products … to be provided are controlled by the … International Traffic in Arms Regulations (22 CFR 120–130)" and that he would "obtain any licenses or prior approvals required by the U.S. government." He told a friend that he was looking for a box in which to ship "cockpit seals" (which is what his Venezuelan Air Force contact called the canopy seals) to Venezuela. FedEx shipping rec-

ords revealed that Dobek had indeed shipped a box, labeled as containing "base molding," to his contact in Venezuela shortly after the discussion with his friend. This pattern of purchase and shipment was repeated a year later; this time the box shipped to Venezuela was signed by Dobek's Venezuelan Air Force contact. A month later Dobek received an electronic funds transfer of $87,500. Copies of letters from Dobek to Venezuelan military authorities, found in his apartment, suggest that he was indeed shipping munitions to the Venezuelan Air Force and, doubtless realizing the illegality of his behavior, urging concealment of, and explaining ways of concealing, his activity.

The proof that Dobek and the Venezuelan Air Force officer with whom he dealt had conspired to violate the embargo on the sale of munitions to the Venezuelan military was overwhelming and made the officer's emails admissible as statements of a co-conspirator in the course and furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). The evidence sketched above was likewise more than sufficient to allow a reasonable jury to find beyond a reasonable doubt that Dobek had willfully violated as well as conspired to violate the embargo, in violation of the Arms Export Control Act, 22 U.S.C. § 2778.

The only ground for the appeal that has any possible merit involves the jury instruction on willfulness. Both the government and the defense had proposed wordy instructions in legalese, wholly unsuitable for a jury; jurors are not lawyers and jury instructions should steer clear of legal jargon. Not only were the instructions proposed by the opposing lawyers unsuitable for a jury, but it is unclear what the

lawyers thought the word "willfully" in the Arms Export Control Act (it is not defined) means. In the civil context, "willfulness" usually is synonymous with recklessness, which is to say a failure to respond (provided a response would be feasible and effective) to a known serious risk of harm. See, e.g., *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958 (7th Cir. 2010); *Wassell v. Adams*, 865 F.2d 849, 853–54 (7th Cir. 1989). But in criminal law it often requires also knowing that one is violating the law, *Cheek v. United States*, 498 U.S. 192, 201–02 (1991); *United States v. Pulungan*, 569 F.3d 326, 329–31 (7th Cir. 2009); *United States v. Muthana*, 60 F.3d 1217, 1222 (7th Cir. 1995), and that is the sense in which the instructions submitted by the lawyers in this case attempted to define the term.

Ordinarily a person is conclusively presumed to know the law, which is to say that ignorance of the law that one has violated is not a defense to conviction for the violation. But this principle, sensible when a person is bound to know that what he is doing is wrong, breaks down when a person who does not know of the law prohibiting what he does has no reason to think that he's acting wrongfully. Especially when the law is a regulation rather than a statute. He may not be aware of a regulation imposing an embargo on the export of a product to a particular country when it is a product that is commonly exported. The United States is the world's largest exporter of munitions.

So we interpret "willfully" in 22 U.S.C. § 2778 to require knowledge by the defendant in this case that he needed a license to export the munitions that he exported. Cf. *United States v. Pulungan*, *supra*, 569 F.3d at 329. The judge gave the

government's proposed instruction on willfulness, which defined "willfully" as

> the voluntary, intentional violation of a known legal duty. A defendant acts "willfully" if he voluntarily and intentionally violates a known legal duty. An innocent mistake or merely negligent act will not constitute willfulness. A defendant who is aware of a legal duty not to export defense articles on the munitions list but who intentionally exported or attempted to export defense articles has acted willfully.

The "munitions list" is simply a list of all U.S. "defense articles." Because the embargo of sales to Venezuela covered all defense articles, it was illegal to export any item on the munitions list to that country without a license from the State Department.

The instruction should have been shortened to: "the defendant acted willfully if he exported military aircraft parts to Venezuela knowing that the law forbade exporting those parts to that country." The last sentence of the instruction the judge gave at the government's urging required the jury, in order to return a verdict of guilty, only to determine that Dobek had known that it was illegal to export defense articles to Venezuela; it did not require the jury to determine that Dobek knew that the airplane canopies he exported were classified as defense articles. Read literally, the last sentence of the instruction ("A defendant who is aware of a legal duty not to export defense articles on the munitions list but who intentionally exported or attempted to export defense articles has acted willfully") would make Dobek guilty of a willful violation of the statute even if he didn't know

that the articles that *he* exported to Venezuela were on the munitions list. One might know there was such a list and that nothing on it could lawfully be exported, yet not that a particular item was on the list.

So the government is wrong to argue that its proposed instruction, which the judge gave, "was an accurate recitation of the law." But the error was harmless. No reasonable jury would have acquitted the defendant. The evidence reviewed above showed that Dobek exported to Venezuela items, namely canopy seals for F-16s, that he knew to be embargoed.

The government, with misplaced confidence in the accuracy of its instruction, does not argue harmless error. But an appellate court can invoke the concept on its own initiative when it is clear that an error committed by the district court would not have affected the decision of a reasonable jury. See *Neder v. United States*, 527 U.S. 1, 19–20 (1999); *United States v. Ford*, 683 F.3d 761, 768–69 (7th Cir. 2012); *United States v. Giovannetti*, 928 F.2d 225, 226–27 (7th Cir. 1991) (per curiam). To reverse and remand in such a case would create needless repetition, for the result of the trial on remand would be foreordained unless the new jury was unreasonable.

We admit to some misgivings about invoking harmless error with regard to a jury instruction. For where does one stop? Suppose a judge forgot to give any jury instructions in a criminal case, or deliberately decided not to do so because he thought the case open and shut and that the closing arguments to the jury would be an adequate substitute for instructions. The next step would be for a judge to convict the

defendant without bothering with a trial, on the ground that the trial could have only one outcome—the conviction of the defendant. The final step would be to convict him at his arraignment. But these examples merely show that the doctrine of harmless error should not be used to obliterate a criminal defendant's fundamental rights even if it is clear that the assertion of those rights will not gain him an acquittal by a reasonable jury. As we said many years ago, "The Constitution requires (unless the defendant waives his rights) a certain modicum of adversary procedure even if the outcome is a foregone conclusion because the evidence of guilt is overwhelming." *Walberg v. Israel*, 766 F.2d 1071, 1074 (7th Cir. 1985).

But the garbling of one instruction, at least in a case as one-sided as this one—the evidence that the violation was willful was overwhelming—can we think be excused when it satisfies the criteria for harmless error. A supportive point is that the government in its closing argument told the jury that the defendant had known that what he was doing in arranging exports of the canopy seals to Venezuela after the embargo was imposed was illegal. The defendant's defense was that he didn't know that what he was doing was illegal; so the question of his knowledge was placed squarely before the jury.

AFFIRMED.

BAUER, *Circuit Judge,* concurring. The instruction given by the district court looks like many of the willfulness instructions given in this Circuit. This may be due in part to the approach to willfulness that has been taken over the years by our Pattern Criminal Jury Instruction Committee—a Committee which, in the interest of full disclosure, I must confess to chairing since its inception. More specifically, while the view of the Committee has evolved on this issue, the views of district courts may not have.

While our pattern instructions include literally scores of instructions addressed to specific criminal statutes, we have not taken that approach with respect to willfulness instructions. Rather, at least since the 1999 revision of the pattern criminal instructions, the Committee has declined to provide a pattern willfulness instruction. Instead, we have recommended that district judges specifically consider the statute charged in the case in deciding whether to define willfulness in a separate instruction and, if so, how to do so. See Seventh Circuit Federal Jury Instructions (Criminal) (West 1999) at § 4.09. As we concluded then, "it is rarely desirable to give a general definition of 'willfully.' If the statute uses the term and it must be defined, it should be defined in a manner tailoring it to the details of the particular offense charged." *Id*. at 69. But that discussion was part of a lengthy Committee Comment in which we also quoted language from a number of cases and pattern instructions, some of which is similar to what the district court seems to have started with in this case.

Ten or more years later, as we revised the pattern criminal instructions, the feeling of the Committee was that the presence of our extensive comments and citations in 1999 had

turned out to be somewhat inconsistent with our final point, which was that willfulness instructions must be "tailor[ed] to the details of the particular offense charged." As a result, the latest version, while it still offers no pattern instruction, dispenses with the lengthy comment and citations. The Committee instead continues to decline to offer "a general definition of willfulness because the term is statute-specific." See Seventh Circuit Pattern Federal Jury Instructions – Criminal at § 4.11 (Thompson Reuters 2012). As the instruction given in this case suggests, though, not everyone has thrown out their 1999 books. Language used in past cases, perhaps derived from one or more of the sources cited in our 1999 Committee Comment, has continued, as it were, to be passed down through the ages, becoming, in a sense, something of an unofficial pattern willfulness instruction even though the Circuit's Committee has tried to encourage customization, and to discourage pattern-like thinking, where willfulness is concerned.

This problem seems to me to be reflected in this case, in which the instruction at issue adopted the familiar—indeed, the pattern-like—notion that acting willfully involves doing something known to be forbidden by the law. That concept, while important, seems to me to be the easy part. As our Committee has suggested, though, in defining willfulness, paramount attention must be paid to the statute itself. As the majority points out here, had that been done in this case, the precise legal duties addressed in the statute might have been set forth more completely and more accurately. The majority's suggested version of the instruction has that virtue, though it

may, in my view, not adequately account for other aspects of the issue.

I write separately to encourage district judges not to rely overmuch on general language that has been used in the past, but to start with, and focus on, the language of the relevant statute, and the way that statute defines the applicable legal duties and knowledge or intent requirements it imposes, before explaining, in that context, the consequence for the case of a finding that some aspect of proof of that duty or knowledge is lacking. I encourage my colleagues on the district court to heed our Committee's view that, while there may be common notions in every willfulness instruction, there really can be no "pattern" instruction on that issue.

Further, under our normal way of preparing jury instructions in any given case, the burden is on the lawyers to prepare, tender, and argue for any proposed instruction. The judge listens to the arguments and selects, modifies, or rewrites the instructions. So our first admonition to the practicing bar: make sure the instructions you tender address the views this court has enunciated.